**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WILL-BURN RECORDING &** | ) | |
| **PUBLISHING CO.,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 08-0387-WS-C** |
| | ) | |
| **UNIVERSAL MUSIC GROUP** | ) | |
| **RECORDS,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on defendant Warner/Chappell Music, Inc.'s Motion to Strike or Dismiss (doc. 80).  The Motion has been briefed and is ripe for disposition.

**I.     Background.**

Plaintiffs Will-Burn Recording & Publishing Co., Willie Ash and Morris Barnes initiated this copyright infringement action by filing the Complaint (doc. 1) against 17 defendants on July 11, 2008.  In early December 2008, Magistrate Judge Cassady entered a Rule 16(b) Scheduling Order (doc. 38) that, *inter alia*, set a deadline of December 31, 2008 for amendment of pleadings or joinder of additional parties.[1]  Some three weeks after that deadline, on January 21, 2009, plaintiffs filed a Motion to File Amended Complaint (doc. 46) that, *inter alia*, sought to add a new defendant, Warner/Chappell Music, Inc., while dismissing all claims against existing defendant Cash Money Records, Inc.  As grounds for this request, plaintiffs cited their investigative efforts, including contact with Warner/Chappell on December 9, 2008 concerning

---

[1]     To neutralize any suggestion that the deadline for amending pleadings and joining new parties was set unreasonably soon after entry of the Scheduling Order, it bears noting that the parties in their Report of Parties' Planning Meeting (doc. 26) specifically requested a December 31, 2008 cutoff date for joinder of additional parties and amendment of the pleadings. Thus, the Scheduling Order implemented the very deadline requested in the parties' Rule 26(f) Report.  In any event, the parties never sought modification or extension of that setting prior to December 31, 2008.

plaintiffs' allegations that this entity was the publisher of the infringing works. According to plaintiffs, Warner/Chappell did not respond to that written communication (which consisted of both a letter and a copy of the original Complaint).

Despite being afforded an opportunity to do so, no defendant objected to the Motion to File Amended Complaint, either on Rule 15 or on Rule 16 grounds. Warner/Chappell was not yet a party and therefore lacked standing to object. Any of the numerous existing defendants could have opposed the Motion, yet they all chose to remain silent.[2] Given the liberal standard for amendment of pleadings pursuant to Rule 15(a), and the failure of any party to challenge the amendment under the good cause provisions of Rule 16(b), the Court granted the Motion via Order (doc. 55) entered on February 5, 2009, and ordered plaintiffs to file their Amended Complaint as a freestanding pleading on or before February 13, 2009. Plaintiffs ultimately filed their Amended Complaint six days late, and otherwise failed to adhere strictly to the terms of the February 5 Order, for which plaintiffs were chastised in an Order (doc. 65) dated February 25, 2009. A corrected Second Amended Complaint was filed two days later. (*See* doc. 72.)[3]

Warner/Chappell's attorneys filed an Answer (doc. 77) to the Second Amended Complaint on behalf of the 11 other defendants they represent herein. As to Warner/Chappell,

---

[2]     Notwithstanding Warner/Chappell's absence from the case at that juncture, the other defendants certainly could have insisted on strict compliance with the Scheduling Order's deadlines, invoked Rule 16(b), or otherwise protested the untimely inclusion of a new defendant. Inasmuch as those existing defendants chose not to object, this Court did not see fit to raise Rule 16 objections *sua sponte* on their behalf. The fact remains, however, that the Rule 16 concerns animating the pending Motion to Strike or Dismiss could have been brought to the fore far sooner had any of the existing defendants raised them when invited to interpose objections to the contemplated amendment. Of course, Warner/Chappell should not and will not be penalized for other defendants' inaction in that regard, notwithstanding the identity of counsel between Warner/Chappell and many of those defendants.

[3]     That Second Amended Complaint is now plaintiffs' operative pleading in this action. After all, "[a]s a general matter, an amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." *Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006)). As such, the original Complaint and First Amended Complaint are no longer a part of this case, having been superseded by the Second Amended Complaint.

however, defense counsel filed a Motion to Strike or Dismiss (doc. 80), asserting that the claims against Warner/Chappell should be stricken or dismissed "because Plaintiffs failed to comply with the Court's prior scheduling and 'leave' orders." (Doc. 81, at 1.)  Plaintiffs' Second Amended Complaint was filed with leave of court.  Warner/Chappell disagrees that leave should have been granted, such that its Motion is effectively a motion to reconsider.  In other words, Warner/Chappell seeks to have the Second Amended Complaint stricken or dismissed on the theory that the amendment should not have been allowed in the first place.  Inasmuch as Warner/Chappell is asking this Court to revisit its ruling allowing the joinder of that defendant after the Rule 16(b) deadline, the pending motion is squarely in the nature of a motion to reconsider.[4]

## II.    Analysis.

Because plaintiffs sought to amend the Complaint several weeks after the deadline established by the Scheduling Order, Warner/Chappell properly invokes the Rule 16 standard that modifications to scheduling orders may be made "only for good cause and with the judge's consent."  Rule 16(b)(4), Fed.R.Civ.P.  The law is clear that "where a party's motion to amend is filed after the deadline for such motions, as delineated in the court's scheduling order, the party must show good cause why leave to amend the complaint should be granted."  *Smith v. School Bd. of Orange County*, 487 F.3d 1361, 1366 (11th Cir. 2007); *see also Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (similar).  This Rule 16(b) "good cause" standard "precludes modification unless the schedule cannot be met despite the diligence of the party

---

[4]    Of course, a motion to reconsider is not a vehicle "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, --- U.S. ----, 128 S.Ct. 2605, 2617 n.5, 171 L.Ed.2d 570 (2008) (citation omitted); *see also Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (same).  Simply put, "[a] party may move for reconsideration only when one of the following has occurred: an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Vidinliev v. Carey Int'l, Inc.*, 2008 WL 5459335, *1 (N.D. Ga. Dec. 15, 2008) (citations and internal quotation marks omitted).  All of that said, this case is postured differently than most in which motions to reconsider are filed.  The critical distinguishing feature here is that Warner/Chappell was unable to raise its objections to the proposed amendment prior to the Court's initial ruling because Warner/Chappell was not a party at that juncture.

seeking the extension." *Sosa*, 133 F.3d at 1418; *see also Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008) ("To establish good cause, the party seeking the extension must have been diligent."). "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. ... If that party was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *see also O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004) ("Rule 16(b)'s 'good cause' standard emphasizes the diligence of the party seeking the amendment."). In assessing the presence or absence of good cause, the Court recognizes that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609; *see also O'Connell*, 357 F.3d at 155 (indifference by movant precludes Rule 16(b) relief "because such conduct is incompatible with the showing of diligence necessary to establish good cause").

Warner/Chappell having challenged the propriety of extending the Scheduling Order deadline for joining new parties, the Motion to Strike or Dismiss turns on whether plaintiffs have shown good cause for their failure to comply with the original deadline. Upon consideration, the Court finds that plaintiffs have not made the requisite Rule 16(b) showing to justify untimely amendment of the pleadings.

As an initial matter, plaintiffs' entreaty that the liberal Rule 15 standard (rather than the more stringent Rule 16 standard) should govern the proposed amendment disregards binding authority. *See Millenium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293,1299 (11th Cir. 2007) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.") (citation omitted); *Smith*, 487 F.3d at 1367 ("despite Smith's argument on appeal that the district court should have granted his motion to amend his complaint in accordance with ... Rule 15(a), Smith still had to comply with Rule 16(b)'s good cause requirement because he filed his motion to amend" after the deadline prescribed in the scheduling order); *Sosa*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("[B]ecause Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)."). Although plaintiffs correctly observe that the February 5 Order granting leave to amend cited only Rule 15, that is because no defendant had come forward to object

-4-

under Rule 16(b), and this Court in its discretion opted not to raise the deadline modification issue *sua sponte*.[5] Now that Warner/Chappell has raised a Rule 16(b) challenge, the "good cause" standard, and not the liberal Rule 15(a) standard, applies in the first instance.

Plaintiffs next attempt to trivialize the Motion as being directed at the six-day delay between the deadline set by the Court in granting plaintiffs leave to amend and the actual filing of the freestanding Amended Complaint. According to plaintiffs, Warner/Chappell "does not contest" the original decision to grant leave to amend. (Doc. 85, at 3.) The Court does not share plaintiffs' crabbed construction of the Motion to Strike or Dismiss. A plain reading of Warner/Chappell's brief reflects that it is aimed at both plaintiffs' failure to show good cause for the untimely request to amend the pleadings and plaintiffs' failure to file their amended pleading in a timely fashion after being granted leave. That plaintiffs did not file their Amended Complaint until February 19, 2009, when this Court granted them leave to do so by February 13, 2009 does not implicate a scheduling order deadline, does not offend Rule 16(b), and does not warrant dismissal of the Amended Complaint. However, that plaintiffs waited until three weeks after the deadline for amending pleadings or joining additional parties before seeking leave to join Warner/Chappell as a defendant directly implicates Rule 16(b), and obliges plaintiffs to show good cause for their failure to adhere to the Scheduling Order.

In response to Warner/Chappell's Motion, plaintiffs have made no showing of good cause. They have not established that, even with diligence, they were unable to file their request to amend the pleadings until three weeks after expiration of the applicable Scheduling Order deadline. To be sure, plaintiffs offer a blanket statement that they "have acted with diligence, in their efforts to investigate responsible parties, to dismiss parties and in adding new parties." (Doc. 85, at 3.) But they make no specific showing that they could not have filed a motion to amend the pleadings to join Warner/Chappell as a defendant prior to the agreed-upon deadline of

---

[5]        Particularly where a nonmovant objects to a proposed amendment as untimely under the applicable scheduling order, this Court has strictly applied the Rule 16(b) "good cause" standard to belated amendments to the pleadings. *See, e.g., New Hampshire Ins. Co. v. Blue Water Off Shore, LLC*, 2008 WL 4809169 (S.D. Ala. Oct. 28, 2008); *Jackson v. Winn-Dixie, Inc.*, 2008 WL 4183399 (S.D. Ala. Sept. 11, 2008); *HomeBingo Network, Inc. v. Cadillac Jack, Inc.*, 2006 WL 3469515 (S.D. Ala. Nov. 29, 2006); *Smith v. West Facilities Corp.*, 2006 WL 898134 (S.D. Ala. Apr. 5, 2006).

December 31, 2008, as set out in the Scheduling Order.  Plaintiffs make a half-hearted effort to imply that, despite diligence, they could not have joined Warner/Chappell earlier because their investigation into Warner/Chappell's connection with this dispute was ongoing.  But their own filings are inconsistent with such an assertion.  Indeed, back on January 21, 2009, plaintiffs admitted on the record that "[o]n December 9, 2008, Plaintiffs' counsel contacted counsel for Warner/Chappell Music ... and provided a copy of the Complaint and a letter regarding activities of Warner/Chappell Music as the publisher of the accused works.  Warner/Chappell has acknowledged receipt, but has not responded to the letter."  (Doc. 46, at 2.)  By plaintiffs' own admission, then, they knew of Warner/Chappell's status as "the publisher of the accused works" and a prospective defendant at least 22 days <u>before</u> the Scheduling Order deadline for amending the pleadings; however, they failed to undertake to add Warner/Chappell as a defendant in this litigation until 21 days <u>after</u> that deadline, despite receiving no substantive information from Warner/Chappell in the interim.  Plaintiffs tender no explanation, much less a showing rising to the level of good cause, for why they tarried during the intervening 6-week period.  Simply stated, plaintiffs' showing falls well short of establishing that they were unable, despite diligence, to join Warner/Chappell as a defendant prior to the Scheduling Order deadline; therefore, the amendment fails under Rule 16(b), and the Court never reaches the Rule 15 liberal amendment standard on which plaintiffs' opposition to the Motion is based.[6]

_____

[6]       Plaintiffs do not discharge their burden by suggesting at this time that they were "awaiting information promised from counsel for Cash Money Records, supporting the assertion of Defendants Cash Money records and Warner/Chappell, that Warner/Chappell was the proper party to be substituted for Cash Money Records."  (Doc. 85, at 2.)  As mentioned, plaintiffs have previously acknowledged that they went to Warner/Chappell well before the deadline with accusations that it published the allegedly infringing works.  Plaintiffs also said that Warner/Chappell never responded to their December 9 correspondence, so it is unclear what additional information plaintiffs required at that juncture to proceed against Warner/Chappell given that they sent Warner/Chappell a copy of the Complaint and a letter outlining their position that Warner/Chappell was the publisher, after which Warner/Chappell did not rebut those allegations in the 22 days leading up to the December 31 deadline for amending pleadings.  Plaintiffs articulate no argument that further information or investigation was reasonably necessary at that time, consistent with their Rule 11 obligations, before they could formally join Warner/Chappell as a defendant herein.  Similarly, plaintiffs' contention that they "were awaiting information promised from counsel for Cash Money Records ... that Warner/Chappell was the proper party to be substituted" (doc. 85, at 2), is inadequate for the following reasons: (i)

As for any contention that Warner/Chappell should have lodged its objections to the Amended Complaint sooner, the court file reflects that it could not reasonably have done so. Warner/Chappell did not become a named defendant in this action (with standing to object to any procedural defects) until, at the earliest, February 19, 2009, when the Amended Complaint (doc. 64) was filed as a freestanding pleading. Service of process was not perfected on Warner/Chappell until sometime in March 2009, and the instant Motion to Dismiss or to Strike was filed in late March 2009. Because Warner/Chappell objected to the untimely amendment promptly after acquiring standing, and because the parties' submissions reflect that the requisite good cause under Rule 16(b) was lacking, the Court deems it appropriate to reconsider that portion of the February 5 Order (doc. 55) granting plaintiffs' motion to amend the pleadings.[7]

Upon reconsideration, the Court finds that plaintiffs' untimely attempt to amend the pleadings clearly runs afoul of the Scheduling Order and that plaintiffs have failed to satisfy the

---

plaintiffs offer no specifics about what information was sought, why plaintiffs could not obtain it previously or from another source, or when that information became available; (ii) plaintiffs' position appears inconsistent with their own filing of January 21, wherein they referenced only documentation "from CMR regarding the liability of Defendant CMR [not Warner/Chappell] with regard to the accused musical works" (doc. 46, at 2); and (iii) given plaintiffs' representations that they had confronted Warner/Chappell more than three weeks before the Rule 16(b) deadline with claims that Warner/Chappell published the accused works, to which Warner/Chappell had never responded, it is unclear why any further investigation would have reasonably been needed before plaintiffs could move forward with naming Warner/Chappell as a defendant. Certainly, plaintiffs never said in their January 21 filing that newly-acquired information from Cash Money Records was instrumental to Warner/Chappell's joinder. For all of these reasons, the Court finds that plaintiffs have failed to show good cause for seeking modification of the Rule 16(b) Scheduling Order deadline for amending the pleadings or joining parties.

[7]     As mentioned, reconsideration is appropriate where there is "newly-discovered evidence or manifest errors of law or fact," but not where the movant seeks "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur*, 500 F.3d at 1343 (internal citations and quotations omitted). Here, Warner/Chappell is presenting new and meritorious legal arguments that were not before the undersigned at the time of the initial ruling granting the amendment. Moreover, because of the standing considerations discussed *supra*, Warner/Chappell could not have raised these arguments prior to the February 5 Order granting the amendment because Warner/Chappell was not even a party then. On these grounds, reconsideration is appropriate.

good cause standard of Rule 16(b) for modifying same.  Because Warner/Chappell raised its objections in a prompt and diligent manner, the Court will grant the Motion to Strike or Dismiss and will dismiss without prejudice all allegations of the Second Amended Complaint (the operative complaint in these proceedings) purporting to state claims against Warner/Chappell.[8]

## III.   Conclusion.

For all of the foregoing reasons, the Court **grants** Warner/Chappell's Motion to Strike or Dismiss (doc. 80) and **reconsiders** its Order (doc. 55) of February 5, 2009, which allowed plaintiffs to file an amended complaint joining Warner/Chappell as an additional party defendant.  Because plaintiffs sought to join Warner/Chappell as a defendant well after the deadline prescribed in the Rule 16(b) Scheduling Order, because Warner/Chappell promptly objected when it acquired standing to do so, and because plaintiffs have failed to show that they diligently attempted to comply with the Scheduling Order's cutoff date for amending pleadings, the Second Amended Complaint is **dismissed without prejudice** insofar as it asserts claims against Warner/Chappell.  All of plaintiffs' causes of action against Warner/Chappell are **dismissed without prejudice**, and the Clerk of Court is **directed** to terminate Warner/Chappell as a party to this action.

---

[8]      In so finding, the Court has considered plaintiffs' contention that dismissal of the Second Amended Complaint's claims against Warner/Chappell "would constitute manifest injustice."  (Doc. 85, at 3.)  In the first place, plaintiffs have offered no authority to support their apparent premise that the absence of good cause under Rule 16(b) for an untimely amendment can be overcome by a showing of manifest injustice if the amendment is disallowed.  More fundamentally, there is no manifest injustice here.  Plaintiffs acknowledge that they can bring their claims against Warner/Chappell via separate lawsuit if they so choose, after which they could presumably seek consolidation pursuant to Rule 42(a), Fed.R.Civ.P.  Proceeding in that fashion might be inconvenient to plaintiffs, but it is neither unjust nor prejudicial.  Any inconvenience is of plaintiffs' own creation because of their unexplained failure to heed the applicable Scheduling Order deadlines.  Plaintiffs' attempt to analogize the Warner/Chappell untimely amendment to the setting aside of certain other defendants' defaults is misplaced and inappropriate; indeed, with respect to defendants Young Money Publishing and Johnta Austin, plaintiffs' counsel expressly assented to the setting aside of the defaults.  (*See* doc. 74.)  As to defendant Dwayne Carter, no default was ever entered because plaintiffs never moved for default, even though Carter failed to file his Answer (doc. 60) until several weeks after his deadline for filing a responsive pleading.  Here, by contrast, Warner/Chappell neither acquiesced in the untimely amendment nor slept on its right to object to same, so the attempted comparison is ill-fitting.  In short, plaintiffs' manifest injustice argument is unpersuasive.

DONE and ORDERED this 24th day of April, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE